# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| BERTLING LOGISTICS, INC., *et al.*, | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-14-1889 |
| | § | |
| TOTAL QUALITY LOGISTICS, LLC, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION & ORDER TO REMAND

Pending before the court is defendant's motion to dismiss, stay or transfer (Dkt. 20) and plaintiffs' motion to remand (Dkt. 22). After considering the motions, responses, and applicable law, plaintiffs' motion to remand (Dkt. 22) is **GRANTED**, and the defendant's motion to dismiss, stay or transfer (Dkt. 20) is **DENIED AS MOOT**.

## I. BACKGROUND

In December 2012, plaintiff Jeffrey Markim ("Markim") began working for defendant Total Quality Logistics, LLC ("TQL" or "defendant"). Dkt. 1-4 at 3. As a condition of employment, Markim sign a non-compete, confidentiality and non-solicitation agreement ("Agreement"). *Id.* Markim ceased working for defendant TQL in April 2014 and began working for plaintiff Bertling Logistics, Inc. ("Bertling") in May 2014. *Id.*

In June 2014, TQL asserted claims against Markim and Bertling (together, the "plaintiffs") in Ohio state court to enforce the Agreement. *Id.* TQL asserted breach of contract and breach of fiduciary duty claims against Markim. *Id.* Against both defendants, TQL asserted misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act and intentional interference with a

contract and unfair competition. *Id.* at 4. On July 3, 2014, the Ohio court held a hearing on TQL's application for injunctive relief. Dkt. 6 at 2.

In July 2014, plaintiffs filed suit against TQL in Texas state court seeking damages, attorney's fees, and a judgment declaring that the Agreement was unreasonable in its geographical restrictions and scope of activities, as well as unenforceable because it was unsupported by independent consideration and was against the public policies of Texas. *Id.* Plaintiffs also sought a temporary restraining order to enjoin TQL from prosecuting its case against plaintiffs in Ohio state court, and a temporary and permanent injunction prohibiting TQL from taking any action to further prosecute the Ohio litigation. *Id.* On July 2, 2014, the 152nd Judicial District Court in Harris County, Texas granted plaintiffs' temporary restraining order on the Ohio litigation. Dkt. 7-1. Shortly thereafter, defendant removed the case to federal district court. Dkt. 1. Subsequently, plaintiffs filed motions in this court for 1) a preliminary injunction against the Ohio litigation and 2) contempt against defendant for moving forward with the July 3 hearing in the Ohio litigation despite the temporary restraining order issued in Harris County, Texas on July 2. Dkts. 6, 7. This court denied plaintiffs' motions for a preliminary injunction and contempt after a hearing. Dkt. 14. Pending before the court is defendant's motion to dismiss, stay or transfer and plaintiffs' motion to remand. Dkts. 20, 22. The motions have been responded to and are ripe for discussion.

## II. LAW

A federal district court has original jurisdiction of all civil actions where the parties are diverse and the amount in controversy is $75,000 or more. 28 U.S.C. § 1332. However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. 1447(c). "The removing party bears the burden of establishing that

federal jurisdiction exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). In this case the removing party is the defendant. The defendant can meet its burden if it is facially apparent that the claims are likely to exceed $75,000, or if the defendant sets forth summary evidence of facts in controversy that support a finding of the requisite amount. *Manguno v. Prudential and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The amount is calculated by looking at damages from the plaintiff's perspective. *See Garcia v. Koch Oil Co. of Tex. Inc.*, 351 F.3d 636, 639–40, n.4 (5th Cir. 2004).

It can be facially apparent that a plaintiff's damages exceed the jurisdictional amount in cases involving death or severe physical injuries; multiple plaintiffs seeking punitive damages; or dollar amounts that indicate, with a favorable verdict, the plaintiff's damages would exceed $75,000. *Gilman v. Arthur J. Gallagher & Co.*, No. H-09-2355, 2009 WL 5195956, at *5 (S.D. Tex. Dec. 21, 2009) (surveying reviewing Fifth Circuit and district court decisions finding it facially apparent that damages exceed the jurisdictional amount). A defendant can also establish the amount in controversy by asserting facts to support a finding of the requisite $75,000, but must meet a preponderance of the evidence burden. *Manguno*, 276 F.3d at 723. This burden "forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover . . . ." *De Aguilar*, 47 F.3d at 1412. Conclusory allegations will not suffice to meet the burden. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995). "*Any* ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno*, 276 F.3d at 723 (emphasis added). And, "under any manner of proof, the jurisdictional facts that support removal must be judged at the time of removal . . . ." *Allen*, 63 F.3d at 1335.

Attorney's fees are included when calculating the amount in controversy if a statute provides for them. *Manguno*, 276 F.3d at 723. However, courts determining whether attorney's fees will exceed the jurisdictional amount may consider the number of parties, the complexity of the issues to be litigated, and whether the issues turn on discrete questions or law or not. *Gilman*, No. H-09-2355, at *8. For example, attorney's fees in a class action would be more likely to meet the amount in controversy than a simple contract dispute with discrete questions of law and a small number of parties. *Id.*

In determining the amount in controversy for declaratory or injunctive relief, courts look at the "value of the object of the litigation." *Farkas v. GMAC Mortg., L.L.C.*, 737 F.3d 338 (5th Cir. 2013). This is, in other words, "the value of the right to be protected or the extent of the injury to be prevented.'" *Id.* at 341.

Finally, "federal law aggregates claims from a single plaintiff, but generally not across multiple plaintiffs." *Rangel v. Leviton Mfg. Co.*, No. EP-12-CV-04-KC, 2012 WL 884909, at *4 (citing to *Snyder v. Harris*, 394 U.S. 332, 335–37, 89 S. Ct. 1053 (1969)). Some courts have identified an exception to this rule and have allowed aggregation of multiple plaintiffs' claims when plaintiffs have a "common and undivided interest," such as claims that involved an estate, property or an insurance policy. *Id.* at *5 (internal quotations omitted).[1]

---

[1] The court concludes, based on the following reasoning, that it does not have jurisdiction to consider this case because the defendant has not proven by a preponderance of evidence that the amount in controversy exceeds $75,000. Therefore, the court does not consider the substance or law relating to the motion in Dkt. 20 and denies the entire motion as moot.

## III. ANALYSIS

Plaintiffs claim that the defendant has not demonstrated that the value of the pending lawsuit exceeds $75,000, as required to establish federal jurisdiction in a diversity case. Dkt. 22 at 6. Defendant argues that it is facially apparent from the state court petition that the amount in controversy is likely to exceed $75,000. Dkt. 34 at 5. Defendant also attempts to argue that the value of the claims themselves meet the $75,000 requirement.

This case involves a contract dispute that does not list any amounts of damages in the complaint, and it does not involve punitive damages or death or severe physical injuries. *See Gilman*, No. H-09-2355, at *8. Therefore, the defendant has not persuaded the court that it is facially apparent that the amount of the claim exceeds $75,000. *Id.* Defendant also does not plead facts to show that attorney's fees, on the face of the complaint, would exceed $75,000. *Manguno*, 276 F.3d at 723. Therefore, the court considers whether defendant established, by a preponderance of the evidence, sufficient facts to establish that $75,000 is in controversy.

### A. Value of Bertling's claims

*1. Lost market share and lost profits*

Defendant attempts to establish the requisite amount in controversy by claiming that Bertling's damages for loss in market share and profits will exceed the $75,000 requirement if Markim was required to honor the Agreement and not work in the logistics brokerage business for a year. Dkt. 34 at 6. Defendant asserts that one way to calculate this loss of business to Bertling is to show the amount of revenue Markim generated for TQL. *Id.* Defendant goes on to explain that Markim generated a total of $422,256 in revenue for TQL from March 2013 to April 2014, based on an affidavit from TQL's Senior Vice President of Sales. Dkts. 34, 34-1. However, defendant

5

does not explain why Bertling's revenues would be comparable to TQL's revenues, and does not otherwise provide any facts specific to Bertling's damages under the claim.[2] Defendant also does not cite case law or other authority for its argument. Defendant bears the burden in this case and has not established that the amount in controversy was met as to this claim at the time the lawsuit was filed.

*2. Value of declaratory relief and the injunction*

Defendant attempts to establish the requisite amount in controversy of either the declaratory judgment or injunction by claiming that the value of Bertling's declaratory and injunctive relief exceeds $75,000 based on the value of Markim's employment to the company. Defendant argues that because Markim's brokerage revenue at TQL far exceeded $75,000, "it is likely that number would be similar or perhaps even higher at Bertling." Dkt. 34 at 7. However, defendant does not explain why Bertling's revenues are "likely" to be comparable to TQL's revenues, and does not otherwise provide any facts specific to Bertling's damages under the claim.

Defendant next argues that Bertling's injunction seeks the relief of not being subjected to a lawsuit in a foreign state that allegedly lacks personal jurisdiction over Bertling. Dkt. 34 at 7. Defendant explains that one way to quantify this right is by looking at the costs and attorney's fees associated with litigating in a foreign state. *Id.* Based on defendant's experience in defending this

---

[2] Even if the court did find TQL's revenues relevant to establishing Bertling's revenues, revenues are still speculative, compared to profits, as to the actual amount in controversy. *See, e.g.*, *Puckett Mach. Co. v. United Rentals, Inc.*, 342 F. Supp. 2d 610, 616 (S.D. Miss. 2004) (defendant seeking to remove case about non-compete agreement did not carry its burden to establish the requisite amount in controversy because he only alleged *revenues* the plaintiff generated, not *profits*, which were insufficient without additional financial information to establish the profit margin). Defendant's affidavit does explain that the "brokerage revenue" is "*basically* TQL's profit on each load," and is "the amount receives from its customer less what TQL pays the trucking company." Dkt. 34-1 at 3. The inclusion of the word "basically" without further explanation, and the lack of information on TQL's profit calculation after receiving this "brokerage revenue" payment from the customer generates ambiguity over the amount of profits, and therefore, the amount in controversy. Ambiguities are construed in favor of remand. *Manguno*, 276 F.3d at 723

lawsuit, it claims that "expenses and fees in a foreign state can be very high," and "[b]y the end of the litigation in Ohio, costs and attorney's fees would likely be over $75,000." *Id.* Defendant makes these assertions without providing any facts or authority to support its conclusion. Defendant bears the burden in this case and has not established that the amount in controversy was met as to declaratory and injunctive relief at the time the lawsuit was filed.

*3. Request for attorney's fees*

Defendant also generally asserts that attorney's fees and costs alone could exceed $75,000 by the end of this case. Dkt. 34 at 7. This is the entirety of the argument. As defendant does not quantify fees or costs, defendant has not met its burden to show that these fees and costs are likely to exceed $75,000.

*4. Aggregating claims*

While defendant is correct in asserting that the court can aggregate Bertling's various claims to determine if the amount in controversy as to Bertling exceeds $75,000, defendant has not asserted any relevant facts to establish amounts to aggregate. Therefore, defendant cannot rely on aggregation of Bertling's claims to meet its burden to establish that the amount in controversy has been met.

**B. Value of Markim's claims**

*1. Value of declaratory relief and the injunction*

Defendant attempts to establish the requisite amount in controversy of either the declaratory judgment or injunction by claiming that Markim's right to continued employment can be based on his compensation over the year that Markim cannot compete with TQL. Defendant then points to Markim's earnings at TQL in 2013 and 2014 to establish that Markim's compensation at Bertling

7

will be similar or more. Dkt. 34 at 9. However, defendant does not establish facts to show that Bertling's compensation to Markim is comparable TQL's compensation to Markim, other than simply stating that Bertling is a much larger corporation than TQL. Defendant does not otherwise provide any facts specific to Markim's damages under the claim. Defendant also does not cite case law or other authority for its argument. Defendant bears the burden in this case and has not established that the amount in controversy was met as to this claim at the time the lawsuit was filed.

*2. Request for monetary damages*

Defendant claims that because Markim brings claims under the Texas Free Enterprise and Anti-Trust Act ("Act"), and a court "can triple the damages" in certain cases when willful or flagrant violations are shown, it is "very likely" that the alleged damages could exceed $75,000. Dkt. 34 at 9. However, defendant does not provide facts to show what the damages are, or how they are likely to amount to at least $75,000. Further, the claim plead under the Act does not seek damages for willful or flagrant violations, it only seeks actual damages and an injunction. Dkt. 1-4 at 4. Defendant also mentions the tortious interference claim aimed at Markim and Bertling's business relations. However, he never elaborates on facts to establish the amounts of the claim.

*3. Request for attorney's fees*

As in the arguments relating to Bertling, defendant claims that "it is likely that attorney's fees alone could exceed $75,000." Dkt. 34 at 9. Defendant does not provide any basis for this conclusion and has not met its burden to show that fees would exceed $75,000.

*4. Aggregating claims*

As in the arguments relating to Bertling, defendant has not asserted any relevant facts to establish amounts to aggregate. Therefore, defendant cannot rely on aggregation of Bertling's claims to meet its burden to establish that the amount in controversy has been met.

**C. Aggregating the value of plaintiffs' claims**

Defendant claims that the amount in controversy for both plaintiffs' claims should be aggregated because there is a "common and undivided interest" between them. Dkt. 34 at 10. Defendant claims the common and undivided interest is the employment relationship between the plaintiffs. *Id.* The general rule is that plaintiffs' claims are not aggregated together. *Snyder*, 394 U.S. at 335. Defendant has cited no authority for allowing an "employment relationship" to fit into the "common and undivided interest" exception. And, pursuant to the one case plaintiffs cite, this exception traditionally applies to estates, property and insurance policies. *Rangel*, 2012 WL 884909, at *5. The court is not persuaded that the "common and undivided interest" exception encompasses an employment relationship. Further, even if the court applied the exception, the defendant has not pled facts sufficient to establish amounts in controversy for either plaintiff, therefore aggregating the plaintiffs' claims would be futile.

**D. Value of claims to defendant**

Defendant claims that if the Agreement is found unenforceable, it will have a major impact on TQL's business through exposure of its trade secrets and other confidential information. As explained above, the Fifth Circuit calculates damages from the plaintiff's perspective. *Garcia*, 351 F.3d at 639–40, n.4. TQL has not persuaded the court that defendant's potential damages can

somehow satisfy the plaintiffs' amount in controversy. Therefore, defendant's argument is unavailing.

## IV. Conclusion

The defendant has failed to assert sufficient facts that show, by a preponderance of the evidence, that the amount in controversy is at least $75,000. For the foregoing reasons, plaintiffs' motion to remand (Dkt. 22) is **GRANTED**, and this case is **REMANDED** to the 152nd Judicial District Court in Harris County, Texas.[3] Further, defendant's motion to dismiss, transfer or stay (Dkt. 20) is **DENIED AS MOOT**.

It is so **ORDERED**.

Signed at Houston, Texas on October 28, 2014.

_____
Gray H. Miller
United States District Judge

---

[3] Accordingly, defendant's request in the alternative for limited discovery to establish an amount in controversy is denied.